The District Court's decision cannot be squared with the plain language of the statute under which this case was brought, the Federal Railroad Safety Act, or FRSA for short. By misinterpreting Kudik and Blackerby, the District Court took what is supposed to be one of the most employee-friendly statutes and turned it on its head. Sustaining the District Court's order would be tantamount to holding that employees who go to a jury trial only if they have direct evidence. That cannot be the case. For reasons unique to the railroad industry, BNSF has a financial incentive to scare employees away from reporting the injuries they suffer, blame them for whatever injuries they do report, and then find a supposedly independent reason to terminate them. Due to BNSF's and the other railroads' history of acting on this financial motive, Congress amended the FRSA, making it easier for retaliating against employees to prove their cases than plaintiffs bringing suits under the discrimination statutes with which courts are more familiar. This amendment was only after years of other attempts at regulatory fixes, each of which failed and thus the amendment tilted the scales of justice in favor of railroad employees. Congress so tilting the scales was recognition of BNSF's and the other railroads' corporate cultures, which are ones of retaliating against employees who suffer injuries, and it recognized the difficulty of proving that such culture, no matter how true, resulted in a particular supervisor having a retaliatory motive on a given day. Here, Jeffrey Nealon went to a doctor in the fall of 2016, whose pain would again perpetually bother him. Nealon was diagnosed with exhumative trauma or a wear and tear injury that had culminated in him rupturing his Achilles tendon. When he thought about the injury's origin, he recalled having felt a pop in his ankle more than a year earlier while he was working for BNSF. Thus, after receiving the diagnosis, not only reported to BNSF that he had suffered an exhumative trauma injury, importantly, Mr. Nealon thought nothing of the pop in his ankle when he first suffered it. The pop was accompanied by pain, but it lasted less than a minute. In fact, Mr. Nealon was able to finish not only that shift, but work for the next year without issue. Thus, he didn't think anything of the pop until he was told that it was an exhumative trauma injury. It's worth noting, as an aside, that it's impractical for railroad employees to report every bump and bruise, every ache and pain they suffer. Railroading is physical work. These guys are constantly having aches and pains, bumps and bruises. If we require them to report every ache and pain, every bump and bruise, no work can be done. BNSF doesn't disagree. Can I interrupt you? Once you go to a doctor, doesn't it change your logic? He goes to the doctor in November 2015, doesn't tell the railroad until one year later. He doesn't... Isn't that too long? It would be, yes, your honor. But he doesn't go to the doctor in 2015 for his ankle. That's a dispute of fact. He goes for his back. The reference to his ankle, he said, I may have referenced an old injury to my other ankle, but not his left ankle. He does not go to the doctor to that until November 2016. The same day he received the cumulative trauma diagnosis, he reports it to BNSF. In other words, the very day that he learns that he suffered a cumulative trauma injury and speculated that it may have been related to work, he reports it to BNSF. It's also worth noting that BNSF allows these employees a certain amount of discretion about what injuries they must report and which ones they may or not. But then, you know, if the employee happens to be wrong, in this case, for example, they fire the employee. They fired Mr. Neelan. Rather than thank him for reporting his injury, BNSF terminated him. They terminated him pursuant to a rule, an internal workplace rule, that requires employees to report injuries within 72 hours of when suffered. Importantly, the FRSA has no time limitation. Congress did not say we will protect employees who report injuries only if they report within 72 hours. If Congress had wanted that limitation, it could have so done. The evidence in this case included the following. A. Earlier in his career, when he reported an injury, BNSF told Neelan that if he reported another injury, he'd likely be fired, which, by the way, is exactly what happened when he subsequently did suffer a report injury. Was this person a supervisor, counsel? It's over that. No. Say it again. It's claims. It's the claims department. Thank you. Proceed. Not a supervisor. Go ahead. B. BNSF using a rule that effectively prohibits employees from engaging in protected activity to justify Neelan's termination. C. An arbitrator who, under the Railway Labor Act, reviewed the discipline and whether it was appropriate under the Collective Bargaining Agreement, finding that BNSF applied that rule arbitrarily and unreasonably. D. BNSF personalizing the industry-wide financial motive to its supervisors, which it does in two ways. First, there is a compensation structure that essentially bonuses supervisors based on injuries reported to the company. Less injuries equals more money. Secondly, and more specifically to the individualized supervisors, BNSF ranks its supervisors based on the days lost to injury reported by the employees under them. There is testimony in the record that these rankings are hugely important and that if you want to be promoted in the company, you had better be ranked very highly. Half of that ranking system is based on the number of injuries reported by employees under you. Finally, E. The evidence included BNSF having a corporate culture of retaliating against employees who report injuries. At the end of the day, what more circumstantial evidence must an employee offer? What more circumstantial evidence could an employee offer? The only thing that is really missing is direct evidence. When Nielen was diagnosed with a cumulative trauma injury and realized, or at least suspected, that it may be work-related, he had two choices. First, he could report the injury to BNSF. This is what we want him to do. Second, he could hide it. He could tell BNSF, I suffered this at home. It's just a wear and tear injury. It had nothing to do with work. We want him to report it. That's what he did. And BNSF fired him. Wouldn't he have been better off hiding the injury? Isn't that what the law was designed to prevent? If the court has questions, I'm happy to answer them. Otherwise, I will reserve my time for rebuttal. Very well. Thank you for your argument. You may reserve the balance. Mr. Nielen, we'll hear from you. Good afternoon. May it please the court. Brian Nielen for BNSF Railway. The appellee. The court should affirm the summary judgment based on the undisputed facts and the settled law in the circuit as outlined in detail in district court's opinion. BNSF dismissed Mr. Nielen because he violated injury reporting rules by not reporting an injury for 17 months. And he did so while he was on probation for another incident. Mr. Nielen's legal arguments in this court are foreclosed by numerous decisions of this court, including the Heim decision, the Foster decision authored by Judge Colleton, and the very recent Dakota-Minnesota and Eastern Railroad opinion, O'Reilly, which we sent in on a 28-J letter last week. Mr. Nielen pointed to no evidence of intentional retaliation, as this court's decisions require, and to the contrary, the record shows that when he finally did come forward with his injury, the manager directed him to make a report. When he was previously injured, in addition, he did not violate the timely reporting rule. He suffered no adverse employment action. So let me turn now to some of the specific arguments that Mr. Nielen makes on appeal and that we heard just a moment ago. First off, the argument that, and I'm going to jump right to the retaliatory intent question, the intentional retaliation question. The argument that Mr. Nielen was discouraged from filing an injury report. What he's relying on there is that he points to testimony that some four years earlier, someone who he could not identify other than by job title, and that shows that it was not a person who was involved in this case, and it was not a person who was even involved in operations management, had said something that he interpreted to be discouraging him from filing a claim in the future. That it was four years earlier and someone not involved in this case, that's alone enough to reject that as having any weight whatsoever as evidence in this court. And by contrast, again, when he did come forward, there not only was not someone discouraging him, as has been pointed to in some other cases, there was evidence of encouraging him, in fact, more than encouraging him, directing him to make a report of an injury. So that first argument has no weight whatsoever. The second argument about the incentive, BNSF giving managers a financial incentive to encourage retaliation, a few points on that. First, there's no evidence at all of any decision maker in this case being financially incentivized to oppose injury reporting. What Mr. Nielen is pointing to is testimony from other cases involving other managers and other divisions of the company in different time periods. There were no depositions taken here, so there was never any real effort made to try to even show a financial incentive on behalf of the people who were involved in this case. But even if he had done that, a financial incentive or any incentive is always something that a plaintiff can argue, but the plaintiff has to go further. The plaintiff has to show that the manager acted upon any alleged incentive, and here we don't have either. Intentional retaliation doesn't just mean I can point to some reason that I can come up with as to why you would act the way that I say you did. The plaintiff has to show that the management did act out of intentional retaliation, and there's no evidence of that at all, and then plus, and I'm noting this point because the court said it was important to the Heim case, BNSF actually put on fairly significant evidence of the training it provides to managers to not retaliate. In other words, BNSF gives them a disincentive to retaliate as opposed to the alleged incentive to retaliate. And then a couple words about this whole point of looking at safety incentives as alleged proof of retaliation. I just urge the court to be very cautious about that. I pointed you to some OSHA guidance that takes a little bit different view more recently than a prior view. In our brief, that's on page 30 of our brief, the purpose of the FRSA is safety, so it should be okay to incentivize safety, and prompt reporting of injuries helps preserve safety, both because sometimes there are certain FRA reporting requirements that railroads have, but more than that, an employee pointing out an injury can help the railroad make sure that injury doesn't happen to someone else, and as well in this case, because Mr. Nayland did in fact work for a year and a half after he suffered this injury, it helps BNSF prevent and prevent people from working for a year and a half while they're injured, which is what the record here unequivocally shows Mr. Nayland did. Say, Mr. Neal, question for you. There seems to be sort of a recurring theme in a lot of these injury cases where the plaintiffs are essentially arguing that they have a catch-22 problem, that if they get some kind of incident that doesn't really rise to the level of what they consider to be an injury in the immediate aftermath of the incident, they don't report anything because they don't need any treatment, they aren't even feeling that they can't work, but then the condition manifests itself at a later time outside of your reporting period, so then their options are report the injury earlier or not report an injury. Can you address that concern? Sure. I'll first address it by saying that I have certainly heard that argument before. I don't know that I've actually seen any evidence that anyone has pointed to to validate that concern, and then part of what BNSF has done some years ago is they changed the injury and minor pains that someone doing these types of jobs may have, and so that time was extended to 72 hours versus an acute injury, the report is required to be made right away. So that's my response, is BNSF is recognizing that, and then the final point is even if that argument might sound stronger in a close case, this is someone who didn't report for over that he had injury, and by the time a year later, he was actually having to ice his ankle every day, he was having pain every day, he was having difficulty walking every day, so this isn't a question of he reported at 72 hours and one half hour and was disciplined. There's just no question here about this violation. Go ahead, Judge Williams. Thank you. In response to Judge Benton's question, your opposing counsel indicated that his trip to the doctor in November of 2015, he did not mention his left ankle, he mentioned some other, the right ankle, and my recollection, and I did not mark down where in the record this was, my recollection was it was his left ankle he mentioned back in November 2015. Do you know, or what's your position on that? You are correct, Judge Williams. He went in for a back condition, as Mr. Thompson stated, but he also noted, the doctor also noted in the records that he had a history of pain in both the right ankle and the left ankle, and that's at the joint appendix on page 287 is where that document appears. If you would answer another point. Certainly. I think Mr. Thompson actually led with this. If you just look at the statute and read the statute, 201-09, I think it's 84, it doesn't look like there are any time periods or the time periods even matter. So how do you get these time periods that are in all these cases? I get that. How do you square that with the statute? Sure, what the statute requires is retaliating due in whole or in part to protected activity. So the argument has been made that because there's no specific time period in the statute, employers, railroads are not allowed to impose time limits on employee reporting. And that argument has been rejected. It's been rejected by OSHA, even in the, I'll say the older, the Fairfax memo that is referred to in the district court's Smith-Bunge decision that the plaintiff's attorney relies on. And it's also been rejected in that Minnesota, Dakota-Minnesota and Eastern Railroad case from this court that we sent in on the 28-J letter where, you know, the discipline there was for not timely reporting. And the court said that's not retaliation. The issue is that employers are not taking the action because of the report being filed. They're taking the action because the report gave them notice that a violation of the rules had occurred. And that's so different whether we're talking about dishonesty in a report or we're talking about violating a rule that prohibits or that sets a requirement to timely report an injury. And, of course, even going back to the first Blackerby decision, you know, this isn't something that was decided, but it was something that was briefed. And if the view had been that, well, see, I'm out of time. Sorry, I had a little bit of trouble with that on the screen. So I won't go into that other point other than just refer the court to my brief on that. All right. Unless anybody wants to hear more about Blackerby, we'll consider your argument concluded. Thank you for that. Mr. Thompson, we'll hear from you in rebuttal. Thank you, Your Honors. Everything BNSF has argued is that employees must have direct evidence to prove this. We've asked it time and time again. We asked in our opening argument, what more circumstantial evidence could Mr. Neowen show? It has not answered that question because it can't. Mr. Neowen has offered every kind of circumstantial piece of evidence that exists. If the court sustains the district court's ruling, it is saying that employees who bring claims under the FRSA must have direct evidence. It will have made this statute harder to prove than all of the discrimination statutes, and it's supposed to be the opposite. I'm glad opposing counsel brought up Blackerby. That proves the point. In Blackerby, which is stunningly similar, an employee does not initially report an injury until he goes to the doctor and finds out that he has a metal shaving in his eye, that the metal shaving from work is what is causing the discomfort. He then reports it, and they discipline him for late reporting. When it came up to the 8th Circuit, the 8th Circuit reversed a trial verdict in the plaintiff's favor. However, they didn't then grant summary judgment. The 8th Circuit said, you get a trial. They gave Mr. Blackerby a trial based on the same and actually not even as good of evidence as has been offered here. The takeaway is really granting a trial and reversing the district court's decision here, granting a trial to Mr. Nealon, is really just effectively reiterating what the court said in Blackerby. Are there questions I may answer? Seeing none, we'll thank you for your argument. Thank you, judges. We appreciate both counsel appearing in this format. The case is submitted.